RICHARDSON v. CITY OF MT. VERNON.

(Supreme Court, Appellate Division, First Department. December 6, 1912.)

MUNICIPAL CORPORATIONS (§ 1017*)—LIABILITY ON CONTRACTS OF CITY DEPARTMENTS.

 The Mt. Vernon Charter (Laws 1892, c. 182) requires the board of fire commissioners to present an estimate of its necessary expenses for the fiscal year. Section 134, as amended by Laws 1908, c. 226, limits the amount that may be appropriated for the fire department, and provides that the money shall be disbursed for the particular purposes for which the appropriation is made. Section 211a, as amended by Laws 1900, c.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

361, provides that the amount appropriated for the fire department shall be placed in a fund designated for the maintenance of that department, which fund shall not be used for any other purpose than specified in the charter. Section 218, as amended by Laws 1903, c. 448, requires the city treasurer to pay to the treasurer of the board of fire commissioners each month one-twelfth of the appropriation, and provides that the treasurer of the board shall pay all claims against the board, which shall be audited by the board. *Held,* that the city discharges its full liability when it pays the appropriation to the treasurer of the board, and is not liable for the price of property purchased by the board, but that the seller, if the board refuses to audit and direct the payment of his claim, must proceed by mandamus or otherwise against the board itself.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2190; Dec. Dig. § 1017.*]

Appeal from Trial Term, New York County.

Action by Charles E. Richardson against the City of Mt. Vernon. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Frank A. Bennett, of Mt. Vernon, for appellant.
George H. Taylor, Jr., of New York City, for respondent.

LAUGHLIN, J. On the 10th day of March, 1911, the board of fire commissioners of the defendant entered into a contract in writing with the plaintiff, who was doing business under the name of "Combination Ladder Company," for the purchase of two hose wagons in accordance with specifications based upon which the plaintiff had on the 28th day of February, 1911, submitted a proposal in writing, addressed to the board, to furnish and deliver the wagons to the fire department of Mt. Vernon for $1,800. The contract provides, among other things, that the vendor shall retain title to the property until the whole amount of the purchase price shall be paid, and in the event of any default in payment, or if there shall be any attempt to incumber, remove, or dispose of the property before payment, the vendor may resume possession, in which event any moneys paid towards the purchase price are to be deemed rent for the use thereof. The specifications obligated the vendor to guarantee the apparatus for one year, and to make good, without loss or expense to the vendee, any defects arising from poor workmanship or defects in material.

The wagons were delivered in the month of June, 1911, and one of them was received and retained in engine house No. 2, and the other in engine house No. 3. A few days thereafter a member of the board of fire commissioners at the time the contract was made, who in the meantime had become the sole commissioner by virtue of a change in the law (chapter 82, Laws 1911) and appointment thereunder, and had qualified on the 31st day of May, 1911, wrote the vendor, drawing attention to 11 items with respect to which he claimed the wagons did not conform to the requirements of the specifications. The vendor satisfactorily remedied most of the defects, and on the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9th day of August wrote to the fire commissioner requesting payment and expressing a willingness to remedy any other defects. Three days later the commissioner wrote the vendor, inclosing a check for $1,400 on account, saying that the balance would be paid "when I have satisfied myself that the apparatus is going to stand up properly," and drawing attention to three particulars in which he claimed the contract had not been fulfilled, namely, repairing a wheel which had been cut, covering the poles, and painting.

This action is brought to recover the balance of the contract price of the hose wagons. The court submitted the case to the jury with instructions that if the wagons were built according to the specifications when delivered to the fire department, or were thereafter changed to conform to the specifications, the plaintiff was entitled to recover. The principal contention made by the learned counsel for the appellant is that the city is not liable on contracts made by the board of fire commissioners.

The theory on which that argument is made is that by virtue of the provisions of the charter of Mt. Vernon the board of fire commissioners has been created by the Legislature to perform public duties of a governmental nature, and that the duty has been imposed upon the city to provide the necessary funds for the fire department to enable the commissioners to purchase apparatus, and has provided that the moneys when raised shall be turned over to the treasurer of the board of fire commissioners, and that claims shall be audited, allowed, and paid by the board, and that the city performed every duty in the premises enjoined upon it by the Legislature. The fiscal year of the city commenced May 1st. The fire commissioners were required to present to the common council annually "on or before the 15th day of January in each year, a full and itemized statement or estimate of the necessary expenses of his or its office, department, or board for the next fiscal year." For the fiscal year commencing May 1, 1910, the budget as adopted by the common council, in so far as it related to the appropriation for the fire department was as follows: "Maintenance of fire department, $27,294.00." And the next year it was in the same form for $33,000, with an additional item as follows: "Equipment of fire department, $2,500.00." The entire amount of this last item of the appropriation was turned over by the city treasurer to the treasurer of the board of fire commissioners on the 24th day of June, 1911. This appropriation was made, among other things, for the purpose of enabling the fire commissioners to purchase these wagons.

Section 134 of the charter of Mt. Vernon (chapter 182, Laws of 1892, as amended by Laws 1908, c. 226) provided, in effect, that the amount appropriated for the fire department should not exceed one-tenth of 1 per centum of the value of the taxable real property of the city, and that the moneys should be disbursed for the particular purpose for which the appropriation was made, and a violation thereof was declared to be a misdemeanor; and section 211a of the charter, as amended (Laws 1900, c. 361), provided that the amount appropriated for the fire department should be placed in a separate fund, "to

be called and designated by the comptroller and city treasurer as a fund for the maintenance of the fire department, which fund shall not be used for any other purpose than specified in this act." Section 218 of the charter, as amended (Laws 1903, c. 448), provided that the treasurer of the city should pay to the treasurer of the board of fire commissioners each month one-twelfth of the total amount appropriated for the maintenance and expenses of the fire department, and that the "treasurer of the board of fire commissioners shall pay all claims, accounts and demands against the said board of fire commissioners which shall be approved and audited by the said board of fire commissioners."

The facts and these statutory provisions, in my opinion, bring the case directly within the rule stated by the court in Swift v. Mayor, etc., 83 N. Y. 528, where the court, following and applying Dannat v. Mayor, 66 N. Y. 585, said:

"Under this special system it is very clear that an action will not lie in the first instance against the corporation for an indebtedness incurred by the police department. There must be an appropriation to create liability, and if the comptroller pays the sum appropriated to the treasurer of the police department he has performed his whole duty. The creditor must follow it, and look to it for his pay; and if the police department refuses to audit his claim and order payment by its treasurer, the remedy of the creditor is by mandamus."

In People ex rel. Farley v. Winkler, 203 N. Y. 445, 96 N. E. 928, the relator was employed as an engineer by the board of water commissioners of the town of Harrison, county of Westchester, which board was appointed by the town board pursuant to the provisions of the Town Law, and was expressly authorized to employ an engineer, and was provided with funds for that purpose raised by taxation by the town board, and was authorized by statute to construct a water plant, and to operate and manage the same, including the fixing of water rates and the adoption of ordinances for the collection thereof. It was held by the Court of Appeals that the water commissioners were not a corporation, or even a quasi corporation, and were not agents of the town, but merely administrative officers, with power to make contracts in their official name and capacity and intrusted with funds to perform their contract obligations, and that the only remedy for a breach of contract on their part, or on their failure to pay a debt incurred by them in their official capacity, was by writ of mandamus "to compel action on their part, and the writ of certiorari may be invoked where such action is challenged as unlawful."

The learned counsel for the respondent relies on Davidson v. Village of White Plains, 197 N. Y. 266, 90 N. E. 825. But the Court of Appeals in that case manifestly did not intend to modify the doctrine of Dannat v. Mayor and Swift v. Mayor, supra, for in the opinion it is expressly stated that, where the particular mode of discharging the obligations of a municipal corporation is provided by law, that mode must be pursued; and the court stated that the scheme for the payment of claims against the water board of the village of White Plains was radically different from that relating to the payment of claims

against the board of education, to which the Dannat Case relates, and from that employed by the police department, to which the Swift Case relates, and pointed out as one ground of difference that, while the claims were audited by the board of water commissioners, they were paid by the treasurer of the city, and no funds were turned over to the board of water commissioners for such purposes.

Moreover, it fully appears from an examination of the opinion that the principal ground upon which it was declared that the water commissioners were agents of the city in the Davidson Case was that they were authorized to acquire a water plant *for the village, the revenues from which were to be received by the village,* which, in my opinion, is the important distinction between that case and the case at bar. I am of opinion that the city has discharged its full obligation in the premises, and that the plaintiff must rely on his reserved right under the contract to take back the wagons, or upon a remedy by mandamus, or otherwise, against the fire commissioners.

It follows that the judgment and order should be reversed, and the verdict of the jury set aside, with costs to the appellant, and judgment entered in favor of the defendant, dismissing the complaint, with costs (see Bonnette v. Molloy, 138 N. Y. Supp. 67, App. Div. 1st Dept., decided November 8, 1912), upon the ground that as matter of law, under no view of the facts, is there any liability on the part of the city. All concur.