## HELLAWELL v. GRAFELD et al.
### No. 8261.

District Court, E. D. New York.
Jan. 31, 1938.

S. Joseph Oxenberg, of New York City (Ferdinand I. Haber, of New York City, of counsel), for plaintiff.

William V. Hagendorn, of Brooklyn, N. Y., and James W. Andrews, of Jamaica, L. I., N. Y., for defendants.

MOSCOWITZ, District Judge.

This is a motion to dismiss the amended complaint on the ground that it appears on the face thereof that it does not state facts sufficient to constitute a cause of action. The action is brought by the receiver of the Hewlett-Woodmere National Bank to recover a sum of money alleged to have been illegally paid to the Hewlett Bay Fire District under a mistake of law. As defendants, the plaintiff has named five individuals who are designated and sued as fire commissioners of, and constituting the Hewlett Bay Fire District. One of the defendants is further described and sued as treasurer of the fire district.

The origin of the controversy is a transaction had in January, 1932, between the bank, then in full and unrestricted operation, and the commissioners and treasurer of the Hewlett Bay Fire District which had been set up in 1904 under the then section 37 of the County Law of the state of New York, later known as section 38. On January 21, 1932, the fire district opened an account in the bank, making various deposits between that date and March 3, 1933, when the bank suspended operations and was found insolvent. On March 17, 1933, the Comptroller of the Currency appointed a conservator and on May 9, 1934, a receiver was appointed. The plaintiff has been receiver since November 30, 1936.

Before opening the account, the board of fire commissioners had requested the bank to give security for the repayment of the deposits of the fire district. Complying with this request, the bank pledged certain securities for the benefit of the fire district. On June 1, 1933, by agreement between the conservator and the board of commissioners, the pledged securities were sold and the proceeds turned over to the conservator, who, in accordance with the terms of the pledge, paid the treasurer of the fire district $26,457.01, the amount of the deposit the fire district had in the bank at the time of its insolvency and closing on March 3, 1933.

At the time when this action was commenced, the other depositors of the bank had received dividends amounting to only 63 per cent. of their claims, in contrast to the full payment received by the fire district. As a result, the plaintiff contends that the defendants have been unjustly enriched in the sum of $9,789.09.

Two causes of action are set forth. In the first, it is sought to set the pledge aside as void and illegal on the theory that it is ultra vires for a National Bank to pledge its assets to secure the deposits of a fire district which is not a political, but merely an administrative unit. An accounting by the treasurer of the fire district is requested and repayment of the amount received in excess of the percentage payable to the fire district upon its deposit as an unsecured depositor. The second cause of action seeks to recover the same amount upon the theory that the receipt of it by the fire district was a preferential payment made when the bank was insolvent. In both his causes of action, the plaintiff seeks to invoke the equity powers of the court to remedy the results brought about by what he characterizes as illegal transactions.

The defendants contend that they are merely administrative officers, whose nonaction in the performance of a legal obligation can be remedied only by mandamus proceedings in the state court. They urge, therefore, that the complaint be dismissed because this court lacks the power to entertain original proceedings for mandamus.

■ The objection raised by the defendants to the maintenance of this action proceeds from the peculiar legal status of fire districts and the commissioners and other officials thereof. It has been repeatedly ruled by the New York courts that fire districts as such are neither corporations nor quasi corporations and are not to be regarded as jural persons who might be subjected to suit. Buffalo Fire Appliance Corp. v. Mountaindale Fire District, 138 Misc. 285, 246 N.Y.S. 620; People ex rel. Desiderio v. Conolly, 238 N.Y. 326, 144 N.E. 629; People ex rel. Farley v. Winkler, 203 N.Y. 445, 96 N.E. 928; Fabric Fire Hose Co. v. Town of Whitestown, 4th Dept., 187 App.Div. 118, 175 N.Y.S. 191. Since the fire district may not be sued, any recovery for legal liability on fire district contracts, express or implied, must be had, if at all, by proceedings against the commissioners and other officials of the fire district, in their capacity as such. People ex rel. Farley v. Winkler, supra. Officials of New York fire districts are, however, merely administrative officials who are not subject to ordinary actions. If, therefore, the officials of a fire district fail to perform their obligations under agreements properly and legally made in their official capacity, their inaction must be remedied, if at all, by mandamus. Buffalo Fire Appliance Corp. v. Mountaindale Fire District, supra; People ex rel. Farley v. Winkler, supra; People ex rel. Desiderio v. Conolly, supra. While powers given to fire districts under New York law do not expressly encompass the power to open a bank account, this power has always been assumed as a necessary incident to the handling of funds needed for the exercise of other powers expressly granted. In Opinions of Attorney General, 1932, 45 St.Dept. 75, New York State, reference is made to the liability of the treasurer of a fire district for negligence, including the choice of a bank as depository. Since power to open bank accounts exists, it follows that fire district officials are subject to mandamus for nonpayment of legal obligations arising directly from the account, such as the obligation in a proper case to refund the amount of any unjust enrichment.

■ The immediate difficulty which arises, however, to the maintenance of this suit is the limited jurisdiction of this court in respect to mandamus proceedings. The Judicial Code gives the federal court no power to issue the writ of mandamus except in those instances "which may be necessary for the exercise of their respective jurisdictions," 28 U.S.C.A. § 377; see Hughes Federal Practice, Jurisdiction and Procedure, 1931, § 268. This court lacks authority to issue mandamus as an original writ. Cf. McIntire v. Wood, 7 Cranch, 504, 3 L.Ed. 420; Riggs v. Johnson County, 6 Wall. 166, 18 L.Ed. 768; Bath County v. Amy, 13 Wall. 244, 20 L.Ed. 539; Graham v. Norton, 15 Wall. 427, 21 L.Ed. 177; Davenport v. County of Dodge, 105 U.S. 237, 26 L.Ed. 1018; Labette County Commissioners v. United States, 112 U.S. 217, 5 S.Ct. 108, 28 L.Ed. 698; Rosenbaum v. Bauer, 120 U.S. 450, 7 S.Ct. 633, 30 L.Ed. 743.

Plaintiff recognizes the deficiency of mandamus jurisdiction in this court, but urges that the equities of the situation are such that the equity powers of the court should be invoked to supply the insufficiency in mandamus jurisdiction. It is therefore necessary to consider whether the complaint states such facts as would justify a court in sweeping aside the rule that ordinarily fire district officials are amenable only to mandamus.

■ In his first cause of action, plaintiff requests equitable relief on the ground that the pledge is illegal and void and should be set aside. The pledge in question as recognized by both parties was ultra vires. Texas & Pacific Railway Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777; City of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787; City of Mount Vernon v. Mount Vernon Trust Co., 270 N.Y. 400, 1 N.E.2d 825; State Bank of Commerce v. Stone, 261 N.Y. 175, 184 N. E. 750, 87 A.L.R. 1449. This, however, is not sufficient to justify setting aside a transaction which has been completely executed and in which it appears that part of the property in question, namely, the pledged securities, have passed out of the hands of the parties to the controversy. Under the New York rule laid down by City of Mount Vernon v. Mount Vernon Trust Co., supra, and State Bank of Commerce v. Stone, supra, the ultra vires transaction could be rescinded only after restitution of the full amount of the deposits for which the securities sought to be recovered had been pledged as collateral. Accepting, however, the rule set forth in Texas & Pacific Railway Co. v. Pottorff,

supra, to the effect that no rights arise under an ultra vires pledge transaction and that the collateral may be recovered without a return of the full amount of the deposits, the transaction here in question is beyond the stage where it can be set aside. On the face of the complaint it appears that the collateral was sold by consent of the conservator and the fire district. There remains nothing for a court of equity to set aside. In the Texas & Pacific Railway Co. v. Pottorff, supra, return was sought of the collateral. Here the plaintiff admits that he will be satisfied with a money judgment for that is all that it is physically possible to give him on the facts which he alleges. Under such circumstances, it cannot be said that the equities of the situation are such as to demand that this court override the rule that only the remedy of mandamus may be invoked against fire district officials.

By his second cause of action in which a preference is alleged, the plaintiff similarly shows no situation demanding that the machinery of a federal court of equity be strained to afford relief. "A suit for the recovery of preferences is a controversy between the trustee and the preferred creditor, and is not a part of the proceedings in bankruptcy." See Collier, Bankruptcy, 13th Ed. 1923, 1318. Assuming for argument that a preference exists on the facts set forth, there is no inherent reason why the suit to recover it should be brought in the federal equity court. Nor is a suit to recover a preference so predominantly equitable as to justify the extraordinary action which the plaintiff requests. The text-writers recognize a definite diversity of opinion on the question as to whether suits to recover a preference are properly brought on the law or equity side of the court. See Collier, supra, at 1322.

Federal courts are courts of qualified jurisdiction. Their power is to be exercised within the bounds of our federal system of government. Only in the most extreme circumstances, therefore, should a federal court conclude that its equitable powers enable it to assume control over state administrative officials, where the state courts have ruled that such officials are to be coerced only by mandamus.

Cutting through to the heart of the plaintiff's claim, what he sets forth is a case of money paid under a mistake of law. All the money received from the sale of the collateral came into the hands of the conservator. Mistaking his legal rights, he paid the defendants in full from these funds. Some of the principles covering the recovery of money paid under mistake of law are set forth in the Restatement of the Law of Restitution, 1937, 179 et seq. Such a type of action was not unknown to a court of law at common law.

In view of the conclusions to which the court has come, it is unnecessary to determine whether the complaint states a cause of action for recovery of an unjust enrichment and the court does not pass on this question.

Motion to dismiss the complaint granted.

Settle order on notice.